**UNITED STATES of America,**

v.

**Anthony CARROZZA, Dominick Fava, Rocco DiMatteo, and Jusuf Cekic, Defendants.**

No. SSSS89 Cr. 239 (GLG).

United States District Court, S.D. New York.

Jan. 11, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Lisa M. Smith, of counsel), White Plains, N.Y., for U.S.

David Lenefsky (David Lenefsky, of counsel), New York City, for defendant Carrozza.

Edward S. Panzer (Edward S. Panzer, of counsel), New York City, Vincent W. Lanna (Vincent W. Lanna, of counsel), Yonkers, N.Y., for defendant DiMatteo.

Brian J. Stone (Brian J. Stone, of counsel), Chappaqua, N.Y., for defendant Fava.

Salvatore Canonico (Salvatore Canonico, of counsel), Brooklyn, N.Y., for defendant Cekic.

## OPINION

GOETTEL, District Judge:

This action already possesses a well-worn procedural history. Suffice it to say that four defendants remain named in a single thirty-six count indictment, with various other previously named defendants having already pled or agreed to plead guilty. Presently before this court are motions to sever brought by each of the remaining defendants. Additionally, Anthony Carrozza has moved to dismiss certain counts of the indictment based on multiplicity.[1] At this juncture, we note that the government has consented to sever Jusuf Cekic from the action. Consequently, we will not address the merits of his application.[2]

## I. FACTS

The government's primary allegations are rather straightforward. Principally, it claims that Carrozza was engaged in various gambling activities and that he, as well as the other defendants, was also involved in extortionate extensions and collections of credit. There is substantial disagreement and confusion, however, as to whether the defendants' activities were part of a common scheme or merely independent, albeit similar, actions.

The government alleges the existence of only one conspiracy involving each of the three defendants. It claims that Dominick Fava arranged for an extension of credit to Walter Sprague and Sprague's friends ("the Sprague group") at an interest rate of four percent per week. When defaults in payment occurred, Fava allegedly threatened Sprague. At a later meeting held with Sprague, Fava apparently brought

Rocco DiMatteo along with him. DiMatteo, in turn, is claimed to have made additional threats to Sprague.

At the same time as these activities were occurring, Peter Sgrulletta, who has since pled guilty to various offenses, began his attempt to enforce outstanding loans made to Fava. When Fava failed to pay, Sgrulletta allegedly sought the advice of Carrozza, with whom he ran a numbers gambling business. Carrozza allegedly recommended that Sgrulletta use Anthony Carr, who also has pled guilty, to enforce the debt. Carr previously had been used by Carrozza to enforce debts resulting from Carrozza's sports gambling business, which, we note, the government claims is distinct from the numbers gambling business.[3] Carrozza then introduced Sgrulletta to Carr and Carr subsequently met with Fava. Fava then began paying. Fava was apparently so impressed with Carr's collection methods that he requested permission from Sgrulletta to use Carr to collect his debt from Sprague. Sgrulletta and Carrozza discussed the matter and agreed that Carr could collect from Sprague.

Carr then began enforcing the debt against Sprague. Carr remained, however, under the control of Carrozza and Sgrulletta since they feared he might turn against them. In fact, Carr and Carrozza allegedly spoke about Sprague on thirty-seven separate occasions. Moreover, while Carr was actually collecting for Fava with respect to Sprague, at various times Fava was able to directly repay his debt to Sgrulletta by allowing Carr to collect from Sprague and turn the money over to Sgrulletta, thereby eliminating the middleman.

The government alleges that the foregoing facts permit the joinder of Carrozza, Fava, and DiMatteo in one indictment. Based on these facts, the three defendants are named in counts four and five of the

---

1. Numerous other motions were raised by the parties and were resolved from the bench following oral argument on November 17, 1989. Carrozza's multiplicity arguments were actually denied from the bench. Tr. at 42. Nonetheless, we will address this issue again since we believe a further discussion of our ruling is necessary.

2. For ease in comprehension, any reference hereinafter to the defendants generally will only

relate to Carrozza, Fava, and DiMatteo since the government has agreed to sever Cekic.

3. A contrary view of this alleged distinction forms part of Carrozza's multiplicity argument. *See infra* p. 274.

indictment, one count for the substantive offense of extortion under 18 U.S.C. § 894 (1988), and one count for conspiracy under the same statute. These are the only counts of the indictment naming each of the defendants. The other thirty-four counts are joined based on the government's contention that they are part of a common scheme. Specifically, it is alleged that besides the Sprague conspiracy, the various defendants, either individually or, in certain instances, with Fava and DiMatteo acting concertedly, made usurious loans followed by illicit collection activities. The purported link between these acts is that each of the defendants always used Carr to collect on the debts.

Carrozza is not named in conjunction with either of the other defendants in any counts besides counts four and five noted above. Of the nineteen additional counts against him, one count is for sports gambling and one for numbers gambling, both under 18 U.S.C. § 1955 (1988). The crimes are linked to the extortion crimes because many of the debts Carrozza was using Carr to collect on resulted from these enterprises. The remaining counts against Carrozza relate to extensions and collections of credit, along with conspiracies underlying these activities. Of the twenty-one counts naming Carrozza, he is sole named defendant in nineteen of them.

Fava, in turn, is named in fourteen counts of the indictment. All the counts against him relate to either extensions or collections of credit, in addition to related conspiracies. He, however, in addition to being named with Carrozza and DiMatteo in counts four and five, is named with DiMatteo in five additional counts. Therefore, of the fourteen counts in which Fava is named, he is named with Carrozza and DiMatteo together in two counts and with DiMatteo alone in five counts. Moreover, we note that two of the counts in which he is named independently concern further loans to the Sprague group.

Finally, DiMatteo is named in ten counts of the indictment. Each of the counts against him also alleges either illegal extensions or collections of credit, along with related conspiracies. Of these ten counts, DiMatteo is named with Carrozza and Fava in the aforementioned counts four and five, and with Fava alone in five of the remaining eight counts. Therefore, he is independently named in three counts. One of these independent allegations, however, relates to the illegal extension of credit to a party who is later subjected to the illegal collection efforts of DiMatteo and Fava acting concertedly.

With these facts before us, we now turn to the merits of the defendants' motions. We will first discuss the severance issues and then turn to the question of multiplicity raised by Carrozza.

## II.  DISCUSSION

### A.  *Severance*

The parties are joined under rule 8(b) of the Federal Rules of Criminal Procedure, which states:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). As each party recognizes, the crucial question in applying this rule is the meaning of "same series of acts or transactions constituting an offense or offenses." This clause has been interpreted to permit joinder of defendants where the crimes charged arise from a common plan or scheme. *United States v. Ricco*, 549 F.2d 264, 271 (2d Cir.1977) (quoting *United States v. Bernstein*, 533 F.2d 775, 789 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976)), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977); *see also United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987) (need "common thread"). The government proffers two arguments with respect to this clause. First, it contends that all of the defendants conspired with respect to the Sprague group as noted by

counts four and five of the indictment. Moreover, it argues that the persistent use of Carr by each defendant links them in a common scheme.

### 1. Carrozza

■ With respect to defendant Carrozza, we disagree with the government's contention and hereby order that he be severed entirely from this indictment.

Generally, a conspiracy charge will facilitate the establishment of the necessary common scheme or plan. *United States v. Bernstein*, 533 F.2d 775, 789 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). Thus, the defendants probably could be joined in one indictment based on counts four and five alone. However, when additional counts that are unrelated to the general conspiracy are alleged, the government must show they are part of a common plan to properly join them. The government attempts to establish this link by implicitly suggesting that a "wheel conspiracy" exists, with Carr at the hub and the various defendants connected to him by the wheel's spokes. Since the defendants were joined in one conspiracy and since they each used Carr in their individual activities, it is suggested that, *a fortiori*, a common scheme exists.

■ The problem with the government's argument is that while Carr is located at the center of the wheel and is joined to each of the defendants, there is virtually no outer rim connecting Carrozza to the other defendants. In *United States v. Turoff*, 853 F.2d 1037 (2d Cir.1988), the court discussed rule 8 generally, reasoning that while rule 8(a) permits the joinder of unrelated offenses against a single defendant if they are of a similar character, rule 8(b), which deals with the joining of defendants and is at issue in the case at bar, permits no such joinder. *Id.* at 1043. Rule 8(b) requires a common scheme or plan and the mere existence of similarities between some of the actors or some of the crimes committed will not suffice. This situation

is analogous to that presented in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In *Kotteakos*, the government attempted to establish the existence of a single conspiracy by nineteen defendants. It was alleged that each of the defendants utilized the services of Simon Brown to obtain loans under the National Housing Act. However, there was no connection among the defendants. The Court found that the proof offered was not of one conspiracy but of several as there was no "rim of the wheel to enclose the spokes." *Id.* at 755, 66 S.Ct. at 1243. Quoting from the circuit court's opinion, the Supreme Court noted, " 'Thieves who dispose of their loot to a single receiver—a single "fence"—do not by that fact alone become confederates: they may, but it takes more than knowledge that he is a "fence" to make them such.' " *Id.* (quoting *United States v. Lekacos*, 151 F.2d 170, 173 (2d Cir.1945)).[4]

We are similarly persuaded by the analysis of a number of Fifth Circuit decisions where closely analogous issues were presented. In *United States v. Nettles*, 570 F.2d 547 (5th Cir.1978), the indictment charged three defendants with operating separate gambling enterprises that were allegedly linked by the common use of the same three police officers to facilitate their operations. The court found this link unsatisfactory under the rule. Joinder is not permitted "[w]hen, as here, the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim." *Id.* at 551; *see also United States v. Lane*, 735 F.2d 799, 805 (5th Cir.1984) ("requirement of a common scheme ensures that the offenses are actually part of a *series* of transactions"), *rev'd in part on other grounds*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

In response to the aforementioned arguments and the fact that only two of the

---

**4.** We note that the *Kotteakos* case dealt with the issue of multiple conspiracies, not severance *per se*, and that the defendants in a multiple defendant indictment need not be charged with an overriding conspiracy to be joined. Nonetheless, we find the language and analysis of the Court to be relevant to the facts presented before this court.

thirty-six counts name all three defendants, the government points to the last clause of the rule which states that "all of the defendants need not be charged in each count." The cases cited in support of its position, however, are readily distinguishable. In *United States v. Weisman*, 624 F.2d 1118 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), the court allowed the joinder of ten defendants in a case arising from the creation, operation, and bankruptcy of a theatre in Tarrytown, New York. Various defendants were charged with securities fraud, bankruptcy fraud, and RICO. One defendant, Cannatella, claimed that he should have been severed from the case since he was only charged with bankruptcy fraud, not securities fraud or the unifying RICO counts. The court disagreed, concluding that since the securities and bankruptcy frauds constituted the predicate acts needed to establish the necessary "pattern of racketeering activity" under RICO, a defendant involved in only one of the predicates can still be part of a "series of acts or transactions constituting an offense." *Id.* at 1129.[5] However, in this case the RICO count served as a unifying allegation, covering all the offenses alleged against the defendants. Moreover, Cannatella was in a managerial position in the theatre along with the other defendants. He also arranged loans for the theatre and was engaged in the skimming of the theatre's receipts. To suggest that he had no contact with the other defendants, as in nineteen of the twenty-one counts against Carrozza, is simply unfounded. Additionally, in *Weisman* there were other defendants charged with the underlying bankruptcy fraud. This was not a situation where one defendant, like Carrozza, performed the overwhelming majority of his illegal transactions independently. Similarly, in *United States v. Barton*, 647 F.2d 224 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152

(1981), another case relied on by the government, the court denied a motion to sever made by a defendant charged in only one count of a multi-count indictment only after explicitly finding that the count was "integrally related" to the others. *Id.* at 239–40.

The government cannot simply rely on this last clause of the rule and ignore its earlier provisions. Two taxpayers using the same accountant to commit fraud are not acting in concert and cannot be joined if they have had no contact with one another, *see United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir.1976), and, similarly, nineteen of the twenty-one counts against Carrozza are not part of a common scheme simply because he, like the other defendants, utilized Carr's services. The fact that he allegedly acted in concert with Fava and DiMatteo with respect to two of the counts is not sufficient to show a common plan under the rule. *See United States v. Levine*, 546 F.2d 658, 665 (5th Cir.1977) (one overt act committed together in the face of twenty independent overt acts is insufficient to justify joinder). Moreover, we note that an earlier indictment in this case separated Carrozza from the other two defendants, allegedly because of the gambling operations. To suggest that because Carrozza's gambling cohorts have pled guilty now requires Carrozza to be joined with the other two defendants is an ineffectual argument. Finally, we recognize that one of the primary purposes of the joinder statute is judicial economy. Severing Carrozza completely will result in little additional time expenditure since we are faced with the potential overlap of only two counts based on one substantive offense. Therefore, we find that Carrozza must be severed from this indictment.[6]

2. Fava and DiMatteo

■ Fava and DiMatteo have also moved, albeit dispassionately in contrast to

---

**5.** It has been recognized that the RICO statute, which requires a showing of an enterprise and a pattern of racketeering activity, makes it easier to allege a conspiracy and, in turn, a common scheme or plan under rule 8(b). *See* 1 Wright, *Federal Practice & Procedure* § 144, at 519 (1982).

**6.** The government has suggested that if the indictment is severed two juries should hear the case. We will not address this argument since the physical layout of this courthouse prevents us from entertaining such a trial.

their application with respect to Carrozza, for severance from one another.[7] While Carrozza was independently named in nineteen of the twenty-one counts against him, Fava and DiMatteo are named together in a significantly greater proportion of the counts against them. Initially, we recognize that the connection of the two with respect to the Sprague group conspiracy is less tenuous than was Carrozza's involvement since DiMatteo is alleged to have actually accompanied Fava to seek collection of the debts. Carrozza's involvement in this particular scheme, we reiterate, was his alleged willingness to allow Carr to work for Fava and his subsequent discussions with Carr about Sprague. As to the indictment's other counts, DiMatteo is jointly named with Fava on five of the remaining eight counts against him. Moreover, one of these three independent counts involves the illegal extension of credit to Robert DePascale, even though both DiMatteo and Fava are named together with respect to the subsequent collection from DePascale. Similarly, Fava is named with DiMatteo on five of the remaining twelve counts against him. In addition, two of these seven independent counts relate to further extortionate extensions of credit to the Sprague group and DiMatteo does not even seek severance of these two counts as they are admittedly related to the underlying scheme. Hence, the independent counts at issue are two counts, involving one victim, against DiMatteo, and five counts, involving two victims, against Fava.

The language noted earlier with respect to our severance of Carrozza is equally applicable in this context. Notwithstanding the individual claims against Fava and DiMatteo, the vast majority arise from concerted activities. The Second Circuit in *United States v. Scotto*, 641 F.2d 47 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), was faced with an analogous situation. In *Scotto*, Scotto and Anastasio were convicted on forty-three counts, twenty-four of which

related solely to Scotto's receipt of unlawful payoffs and four of which related only to Scotto's failure to pay taxes on his illegal receipts. Anastasio moved for severance but, in ruling on a petition for rehearing, the court held that the actions of Scotto were part of a series of acts constituting offenses "in a substantial number of which Anastasio directly participated and as to a substantial number of which he conspired." *Id.* at 59. Therefore, the court apparently found that the existence of some claims in which Anastasio had not participated, provided he was involved in a substantial number of the activities, was not fatal to the government's joinder. *Accord United States v. Butera*, 677 F.2d 1376, 1384–85 (11th Cir.1982) (joinder permissible when indictment had three counts for sale of cocaine, only the first and third of which named both defendants), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Similarly, in the case at bar, we will allow the joinder of all claims against Fava and DiMatteo because of the existence of a substantial number of actions arising from a common scheme.

We also reiterate that one of the purposes behind rule 8 joinder is "trial convenience and economy of judicial and prosecutorial resources—considerations of particular weight when the government and the courts have been placed under strict mandate to expedite criminal trials." *United States v. Werner*, 620 F.2d 922, 928 (2d Cir.1980) (Friendly, J.). We previously noted that joinder of Carrozza saves virtually no time or resources since nineteen of the counts against him are unrelated to any activities of the other two defendants and also because his role in the two related counts is extremely limited. With respect to Fava and DiMatteo, however, it is substantially more economical for them to be joined since separate trials would encompass a total of twenty-four counts, seventeen of which are integrally related. Joinder in a case such as this is precisely what was intended by the rule.

---

**7.** Actually, while Fava seeks complete severance from DiMatteo, DiMatteo only seeks severance from Fava as to Fava's independent counts.

### a. *Prejudice*

■ Notwithstanding our determination that the requirements of rule 8 have been satisfied with respect to Fava and DiMatteo, we must address their contention that rule 14 permits severance to prevent undue prejudice. The rule states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires....

Fed.R.Crim.P. 14. The rule was adopted to insure that "each individual defendant receives a fair trial based on the charges and evidence fairly attributable to him." *United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). The defendants possess a heavy burden of establishing that substantial prejudice would result from the joinder of defendants at trial. *United States v. Lord*, 565 F.2d 831, 839 (2d Cir.1977).

■ The principal arguments raised on this issue relate to the inclusion of Carrozza in the indictment despite his nineteen unrelated counts. He, however, has been severed. The arguments made as to Fava and DiMatteo are less compelling. In essence, each claims that the potential spillover effect of the charges against the other defendant will prevent him from having a fair trial. Moreover, defendant Fava suggests that he may want to call DiMatteo as a witness in his behalf. Notwithstanding these suggestions, we find no risk of undue prejudice resulting from the joinder of Fava and DiMatteo.

■ The mere fact that a defendant's chances for acquittal are lessened by being joined with other defendants does not mandate severance. *United States v. Fantuzzi*, 463 F.2d 683, 687 (2d Cir.1972). Moreover, the fact that the defendants may have different degrees of guilt or notoriety does not require separate trials. *Nersesian*, 824 F.2d at 1304; *see also United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975). Nonetheless, even if these were relevant factors, there is no such showing in this case. There is little difference between the charges against Fava and those against DiMatteo. Both are involved in a similar number of violations of the extortion statutes. Finally, we are confident that explicit instructions with respect to the various counts will enable a jury to effectively discern the evidence offered against each defendant. The fact that there exist separately named victims will also allow a jury to intelligently determine the relationship of each defendant to the respective victims. As the Supreme Court recognized, albeit in a slightly different context, "[e]very act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt." *Oregon v. Kennedy*, 456 U.S. 667, 674, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). The question in the context of the case before us is whether such prejudice is undue, requiring severance under rule 14. We find that no such prejudice has been established by either Fava or DiMatteo.[8]

### B. *Multiplicity*

Carrozza raises the issue of multiplicity on two grounds: the extortion conspiracies and the gambling counts.

Multiplicity exists "when a single offense is alleged in more than one count" of an indictment. *United States v. Nakashian*, 820 F.2d 549, 552 (2d Cir.), *cert. denied*,

---

**8.** Fava's argument that he wishes to call DiMatteo as a witness and that DiMatteo's counsel said DiMatteo would not testify at a joint trial is insufficient to require severance. *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir.1984), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

In this case, we are only dealing with two defendants being joined in a trial that will last for substantially less than four months. Therefore, we do not find ourselves bound to enter into the detailed inquiry articulated by the Second Circuit in *United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989), which related to the so-called "megatrial."

484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987). The purpose behind this doctrine is twofold. First, the doctrine seeks to prevent Constitutional violations of the Fifth Amendment's double jeopardy clause. *Id.* Moreover, there is a fear that a jury may be prejudiced by the suggestion that a defendant has committed several crimes, rather than only one. *United States v. Reed,* 639 F.2d 896, 904 (2d Cir.1981). Thus, the courts must prevent the charging of the same offense in two different counts. Often, questions as to multiplicity arise in the context of two statutes prohibiting similar activities. The question also is raised when, as in the case at bar, one statute is allegedly violated on different occasions, presenting the issue of whether there is actually only one continuing violation.

### 1. Conspiracy Counts

■ The indictment has five separate conspiracy counts against Carrozza relating to either extortionate collection activities or the extortionate extension of credit. In each of these counts, Carrozza is alleged to have conspired with unnamed parties. Carrozza contends that there should only be one conspiracy charge encompassing all these claims and that the indictment as it stands is multiplicitous. The government's contention, on the other hand, is that each claim relates to a separate conspiracy covering different time periods and different victims.

The Supreme Court in *Blockberger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), stated that if proof of each offense requires proof of an additional fact then the offenses are separate. *Id.* at 304, 52 S.Ct. at 182; *see Nakashian,* 820 F.2d at 552. In both the *Blockberger* and *Nakashian* cases, the Supreme Court and Second Circuit, respectively, were faced with the multiplicity argument in the context of a factual scenario where multiple statutes were ostensibly violated and the

question was whether the defendant could be convicted under both statutes. In the case at bar, we are faced with a simpler situation since we are talking about multiple violations of the same statute.[9] Analogizing to the *Blockberger* rule, there clearly are different facts needed to establish the existence of the different conspiracies. *See United States v. Biaggi,* 675 F.Supp. 790, 800 (S.D.N.Y.1987). Furthermore, we find that the additional risk of unduly prejudicing the jury by allowing these counts to stand does not exist. Four of the five conspiracy counts have underlying substantive offenses that will already have been presented to the jury. Any prejudice the defendants may suffer results from the strength of the government's case and nothing else.

The main case relied on by Carrozza is clearly distinguishable from the facts of our case. In *United States v. Peacock,* 761 F.2d 1313 (9th Cir.) (Kennedy, J.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985), the defendant was indicted on two conspiracy counts, one to distribute amphetamines and one to distribute P–2–P, a precursor of amphetamine in the production process. The court found the counts to be multiplicitous as "[t]he two counts charged violations of not only the same conspiracy statute but also the same underlying statute, the same parties, duration, location, and overt acts." *Id.* at 1319. This is quite different from the indictment against Carrozza alleging that the conspiracies occurred at different times, for different durations, and extorted different victims. The mere existence of some similarities does not make the claims multiplicitous since proof of each claim requires proof of different facts.[10]

### 2. Gambling Counts

■ Carrozza is charged with two violations of the same gambling statute, 18 U.S.C. § 1955 (1988), one count based on sports gambling and one based on numbers

---

9. Actually, four conspiracies involve extortionate collection activities, in violation of 18 U.S.C. § 894 (1988), and the other involves the extortionate extension of credit under 18 U.S.C. § 892 (1988). This distinction, however, has no bearing on our resolution of this issue.

10. We point out that Carrozza also argues that the government's position with respect to joinder, where it alleges one common scheme, is inconsistent with its claim of multiple conspiracies. This may be true but the severance of Carrozza remedies this situation.

gambling. While admitting that both sets of activities fit within the statute, he argues that the two counts are multiplicitous. For the same reasons mentioned with respect to the multiple conspiracy counts, we find that the gambling counts are not multiplicitous. The gambling counts each allege distinct factual scenarios, including different time periods and different substantive activities. The fact that both operations violate the same statute does not make the counts multiplicitous.

Alternatively, Carrozza requests that the government be forced to amend the indictment to specify the distinction between the two counts, claiming that he cannot adequately prepare his defense. The courts have held that "an indictment must allege the essential elements of the offense charged." *United States v. Beech–Nut Nutrition Corp.,* 659 F.Supp. 1487, 1492 (E.D.N.Y.1987) (citing *Wong Tai v. United States,* 273 U.S. 77, 80–81, 47 S.Ct. 300, 301–02, 71 L.Ed. 545 (1927)). In this case, the government has clearly satisfied its burden. Each count states that the respective operations are illegal under New York law, that they represented a gambling operation, that they involved five or more persons, and that they were in operation for thirty or more days. These are the elements of the gambling statute and Carrozza clearly is able to prepare his defense. Therefore, we find the two counts are sufficiently alleged.

## III. CONCLUSION

We conclude that Carrozza is to be completely severed from this indictment. Moreover, the counts against him are not multiplicitous and, thus, they need not be merged when the government files its subsequent indictment against Carrozza. Pursuant to the government's consent, Cekic is also severed from this indictment. Finally, Fava and DiMatteo will not be severed from one another and remain in this indictment as to all counts against them.

SO ORDERED.