**UNITED STATES of America,**

v.

**FORDE et al., Defendants.**

**No. 08 Cr. 0828(VM).**

United States District Court, S.D. New York.

March 16, 2010.

Lisa R. Zornberg, U.S. Attorney's Office, SDNY, New York, NY, for United States of America.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendant Joseph Olivieri ("Olivieri") moves for severance of his trial from that of his codefendants for misjoinder pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure ("Rule 8(b)"). In the alternative, Olivieri moves pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure ("Rule 14(a)") for severance based on extreme prejudice. For the reasons set forth below, both motions are DENIED.

### I. BACKGROUND [1]

On August 3, 2009 the Government filed a twenty-nine count third superseding indictment (the "Indictment") charging Olivieri and nine [2] other individuals with labor racketeering offenses, including giving and accepting bribes, conspiracy, perjury, obstruction of justice, and defrauding the United Brotherhood of Carpenters and Joiners, the District Council of New York City and Vicinity (the "District Council"), and the District Council's benefit funds (the "Benefit Funds").

Olivieri was the Executive Director of the Association of Wall, Ceiling and Carpentry Industries of New York (the "Association"). As Executive Director, Olivieri represented more than 160 union contractors belonging to the Association, which employed thousands of District Council members annually on job sites throughout New York City. From about 2000 through 2009, Olivieri was also a trustee of the Benefit Funds.

The Government charges Olivieri in four separate counts of the Indictment. In Count Three, Olivieri is charged, along with eight of his codefendants, with conspiracy to commit wire fraud. As the basis for the conspiracy charge, the Government alleges that Olivieri and others participated in a scheme with James Murray ("Murray"), the owner of On Par Construction ("On Par"), to defraud the Benefit Funds. The Indictment alleges that Olivieri and his codefendants assist-

---

1. For the facts stated herein, the Court relied on the Indictment, the Memorandum of Law in Support of Motion for Severance by Defendant Joseph Olivieri dated January 8, 2010 ("Def. Mem."), the Government's Opposition to Defendant Joseph Olivieri's Motion for Severance dated February 16, 2010 ("Gov't Opp."), and the Reply Memorandum of Law in Further Support of Olivieri's Motion for Severance dated March 2, 2010 ("Def. Reply"). Except where specifically referenced, no further citation to these sources will be made.

2. Olivieri's codefendants include Michael Forde ("Forde"), John Greaney ("Greaney"), Brian Hayes ("Hayes"), Michael Brennan ("Brennan"), Finbar O'Neill ("O'Neill"), Brian Carson ("Carson"), Joseph Ruocco ("Ruocco"), John Stamberger ("Stamberger"), and Michael Vivenzio ("Vivenzio").

ed On Par in violating its obligations under its Collective Bargaining Agreement with the District Council (the "CBA"). Such violations included employing non-union labor on its job sites, paying carpenters in cash and through off-the-books payrolls at below-union wage rates, and filing false remittance reports that concealed the actual number of employees and hours worked by employees. In doing so, Murray underreported money owed to the Benefit Funds.

The Government alleges that in exchange for assistance with defrauding the Benefit Funds, Murray gave cash, loans, and other things of value—totaling more than $1 million—to District Council representatives including Forde, Greaney, Brennan, Carson, Ruocco, Stamberger, and Vivenzio, and Benefit Funds trustees, including Forde, Greaney, and Olivieri. The Government also alleges that these defendants helped to mask On Par's fraud, and violated their fiduciary duties to the District Council, its constituent local unions, and the Benefit Funds.

The Government alleges that Olivieri committed at least four overt acts in furtherance of the conspiracy charged in Count Three, including accepting a $730,000 loan from Murray to purchase investment properties in Yonkers, New York, and secretly helping Murray to obtain control of another drywall contracting company.

In Count Fourteen of the Indictment, the Government charges Olivieri with making unlawful payments to labor representatives, including codefendants Forde and Greaney. In Count Twenty–One, the Government charges him with unlawfully accepting a $730,000 loan from Murray with the intent to be influenced in his role as trustee of the Benefit Funds. Finally, in Count Twenty-two, the Government charges Olivieri with perjury. Specifically, in a deposition conducted in relation to

*United States v. District Council of the United Brotherhood of Carpenters & Joiners,* 90 Civ. 5722, a case pending in this district, the Government alleges that Olivieri gave false testimony that included denying a business relationship with Murray.

## II. *LEGAL STANDARD*

Rule 8(b) allows the Government to join defendants who "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8. To be properly joined, the defendants' acts must be "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Rittweger,* 524 F.3d 171, 177 (2d Cir. 2008) (quotation marks omitted). In determining whether joinder is proper under Rule 8(b), courts should "apply a common sense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *Id.* (quotation marks omitted). Typically, "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R.Crim.P. 8(b)." *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir.1988). The appropriate remedy for misjoinder is severance. *See United States v. Carrozza,* 728 F.Supp. 266, 271 (S.D.N.Y.1990), *aff'd,* 956 F.2d 1160 (2d Cir.1992) (unpublished table decision).

Rule 14(a) grants the court discretion to sever the trials of codefendants where they have been indicted together properly under Rule 8(b), but joinder nonetheless "appears to prejudice a defendant or the government." Fed.R.Crim.P. 14(a). A defendant seeking severance pur-

suant to Rule 14(a) must overcome the strong presumption in favor of trying jointly indicted defendants together. *See United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983) ("[A]bsent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."), *see also United States v. Rosa*, 11 F.3d 315, 341 (2d Cir.1993) (noting the "preference, in the federal system, for the joint trial of defendants indicted together.") (*citing Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)).

■ In evaluating a defendant's Rule 14(a) motion, courts must consider that separate trials of jointly indicted defendants could "impair both the efficiency and the fairness of the criminal justice system" by requiring "that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Moreover, individual trials present the risk of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Id.* By contrast, jointly trying such defendants "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.*

■ Therefore, a defendant moving for severance under Rule 14 must prove "facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial." *United States v. An–Lo*, 851 F.2d 547, 556 (2d Cir.1988); *see also Zafiro*, 506 U.S. at 539, 113 S.Ct. 933 ("[W] hen defendants properly have been joined under Rule 8(b), a

district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."); *Rosa*, 11 F.3d at 341 ("The principles that guide the district court's consideration of a motion for severance usually counsel denial."). In cases where it appears that joinder will prejudice a party, Rule 14 does not require severance, but "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

## III. DISCUSSION

### A. OLIVIERI IS PROPERLY JOINED PURSUANT TO RULE 8(b)

■ Olivieri argues that the Court must sever the charges against him because the Government improperly joined him in the Indictment in violation of Rule 8(b). Olivieri asserts that he is charged with acts that are not part of the same offense or offenses charged to his codefendants. The Court disagrees.[3]

Olivieri claims that he is improperly joined because he is named as the sole defendant in three out of the four counts alleged against him, and the conduct charged in those counts does not relate to the rest of the conduct alleged in the Indictment. With respect to the remaining count—conspiracy—Olivieri asserts that the Government fails to allege a single overarching conspiracy connecting Olivieri with his codefendants.

---

**3.** To the extent that Olivieri moves for severance pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure (*see* Def. Mem. at 6 n. 6), Olivieri fails altogether to establish that the offenses alleged in Counts Fourteen,

Twenty–One, and Twenty–Two are "not of the same or similar character" or are not based on the same act or transaction" as the other counts in the Indictment. Fed.R.Crim.P. 8(a).

The Court finds that the acts alleged against Olivieri and his codefendants are "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme," *Rittweger,* 524 F.3d at 177, thus justifying joinder. Although the Government does not name Olivieri in the majority of the counts of the Indictment, including Counts One and Two, which allege a racketeering conspiracy and racketeering, respectively, the Court is persuaded that the acts alleged against Olivieri in Counts Three, Fourteen, Twenty–One, and Twenty–Two arise out of a scheme common to Counts One and Two as well as to the remainder of the Indictment.

In Count One of the Indictment, the Government alleges that five of Olivieri's codefendants, Forde, Greaney, Brennan, Hayes, and O'Neill, participated in a racketeering conspiracy to enrich themselves by unlawfully soliciting and obtaining cash payments from owners of construction contractors, Murray among them, who employed District Council members. In return for these cash payments, the Government alleges, Olivieri's codefendants granted favors to contractors. These favors largely entailed assisting contractors in violating the terms of their CBAs.

Similarly, in Count Three, the Government alleges that Olivieri, Forde, Greaney, Brennan, O'Neill, Carson, Ruocco, Stamberger, and Vivenzio, participated in a conspiracy to defraud the Benefit Funds for their own enrichment. The Government has indicated that to prove the conspiracy alleged in Count Three, it intends to introduce evidence that Murray cultivated relationships with Olivieri, as well as the other defendants, to help On Par violate its CBA. In this way, the conspiracy alleged in Count Three, and the acts attributed directly to Olivieri, tie into the conduct underlying Counts One and Two, which make up the bulk of the Indictment. Although Olivieri may not have been aware of the individual actions of each of his codefendants, the Government sufficiently alleges that all the defendants were working towards the same end—defrauding the District Council and its Benefit Funds.

According to the Indictment, Olivieri attempted to delay the District Council's efforts to shut down On Par and assisted Murray in gaining control of another drywall contracting company to resume On Par's work in the event that the District Council succeeded. Further, as alleged in the Indictment, Olivieri accepted a loan to purchase an investment property from Murray. The alleged purpose of the loan was to influence Olivieri. The Government makes similar allegations regarding Olivieri's codefendants' interactions with Murray and On Par. For example, in Count Three, the Government alleges that Forde passed a message to Murray through Brennan, telling him to slow down On Par's progress at a particular job site. According to the Government, Forde's intentions were to help Murray conceal that On Par was employing more carpenters than it reported. Forde and others accepted cash payments from Murray in exchange for their assistance in this fraud. Although there are certainly differences between Olivieri's relationship with Murray as compared to his codefendants' relationship with Murray and the other contractors referred to in the Indictment, the Government emphasizes, and the Court agrees, that Olivieri and his codefendants shared a common goal or purpose of defrauding the District Council and its Benefit Funds for their own benefit.

The Court also finds that the charges against Olivieri contained in Counts Fourteen, Twenty–One, and Twenty–Two, support joinder. The conduct alleged against Olivieri in Count Twenty–One is part of the scheme underlying the conspiracy

charge in Count Three. As for the Count Twenty–Two perjury charge, Olivieri is one of six of the defendants alleged to have lied under oath about Murray and On·Par to protect the ongoing illegal scheme. Finally, Count Fourteen, in which Olivieri is alleged to have made unlawful payments to District Council representatives, including codefendants Forde and Greaney, squarely refutes Olivieri's assertion that the Government makes no allegations connecting him with any criminal acts by his codefendants.

In seeking severance pursuant to Rule 8(b), Olivieri relies on *Carrozza*, in which the district court ordered severance despite Carrozza's inclusion in a conspiracy count with his codefendants. *See* 728 F.Supp. at 266. *Carrozza* is distinguishable from the instant matter. In that case, the Government alleged a common plan founded merely on Carrozza and his codefendants' use of the same man to collect their debts. Based on those allegations, that court determined that the originally joined defendants' activities were not part of a single scheme, but independent, though similar, actions. Here, the acts alleged against Olivieri and his codefendants show that the defendants joined in the indictment shared a common goal, not simply a common player or similar criminal behavior.

The Court is not persuaded by Olivieri's arguments to overcome "[t]he established rule ... that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed.R.Crim.P. 8(b)." *Nerlinger*, 862 F.2d at 973. The Court finds that the Government has sufficiently alleged a "common plan or scheme" and a "substantial identity of facts or participants," sufficient to support joinder under Rule 8(b). Accordingly, the Court denies Olivieri's motion to sever made pursuant to Rule 8(b).

**B.** *JOINDER IS NOT PREJUDICIAL PURSUANT TO RULE 14(a)*

■ Olivieri alternatively argues that his trial should be severed from that of his codefendants because of the prejudice to him that would result from a joint trial. The Court finds that Olivieri does not meet his burden of showing that a joint trial would compromise his right to a fair trial.

■ In deciding whether severance is warranted pursuant to Rule 14(a), the following considerations should be weighed: (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others. *See United States v. Santiago*, 174 F.Supp.2d 16, 22 (S.D.N.Y.2001). "While none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Id.*

Olivieri argues that the circumstances presented here weigh in favor of severance. First, Olivieri asserts that such a large trial, involving ten defendants, twenty-nine counts, and thousands of pages of evidence, will create the potential for great confusion of the jurors. He contends that whereas a joint trial will likely take six weeks, a trial of himself individually would take no more than one week. Olivieri suggests that a separate trial would not be a waste of judicial resources, particularly given that the evidence to be introduced against him is separate and distinct from the evidence to be introduced against his codefendants.

644

As discussed above, Olivieri argues that he has not been charged with engaging in any substantive criminal acts with his co-defendants and that, compared to them, he is "truly a tangential defendant in this prosecution." (Def. Mem. at 13.) Relying on *United States v. Kelly*, 349 F.2d 720, 755 (2d Cir.1965), Olivieri contends that the trial will be consumed by factual proof against the codefendants, specifically the evidence offered against District Council officers and members. Finally, Olivieri argues that there is a significant likelihood of conflicting defense theories because he has only been charged in four of the twenty-nine counts alleged in the Indictment, and the allegations against him span a shorter time period than some of the allegations against his codefendants. In sum, Olivieri makes a "guilt by association" argument, portraying himself as a minor actor in the Indictment who will be greatly prejudiced by the incriminating evidence offered against his more culpable codefendants.

The Government disagrees with Olivieri's assessment of the potential for prejudice, and informs the Court that there will be a significant amount of overlap between the evidence introduced against Olivieri and the evidence introduced against his codefendants. Further, the Government asserts that even if Olivieri were severed, much of the evidence regarding Murray's relationship with the other defendants would still be admissible at his individual trial, and likewise that the evidence regarding Murray's relationship with Olivieri would be admissible at the larger trial. Finally, the Government estimates that a trial against Olivieri would take approximately two weeks or more, not one week. According to the Government, joinder poses no danger of the trial within a trial that Olivieri argues would prejudice him and save only minimal judicial resources.

The Court is not persuaded that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. The large scale of the trial does not necessarily trigger severance. Olivieri fails to assert any particular prejudice to himself stemming from the size, length, and level of complexity of the trial except that the jurors may be confused and over-whelmed by the presentation of evidence unrelated to the charges alleged against him. Given the Government's representations, however, the Court is not convinced that there will be as much separate and distinct evidence as Olivieri claims. Considering that a significant portion of the evidence against Olivieri and his codefendants will be in the form of testimony from the same cooperating witness, Murray, the Court finds that Olivieri has failed to demonstrate prejudice against him that would outweigh the benefits of a joint trial.

Further, even assuming that less evidence will be presented pertaining to Olivieri than to each of his codefendants, this fact by itself does not require severance. As the Second Circuit has noted, "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." *United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir.1991). Moreover, prejudicial spillover warranting severance is, in general, "an unlikely occurrence when all the defendants are charged under the same conspiracy count." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir.1998). Here, nine out of the ten codefendants are charged under Count Three for conspiracy to defraud the Benefit Funds.

In addition, much of the evidence that would be offered against Olivieri at a joint trial would likely be admissible against him in an individual trial in light of the fact

that he has been charged with conspiracy. Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)"), for instance, provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," Fed.R.Evid. 801(d)(2)(E), is admissible as nonhearsay. Even if Rule 801(d)(2)(E) does not apply to a particular declaration, the Government argues, as discussed above, that much of the evidence relating to the racketeering scheme would be admissible as background evidence for the conspiracy alleged in Count Three. *See, e.g., United States v. Rittweger,* 259 F.Supp.2d 275, 284 (S.D.N.Y.2003) ("Furthermore, at trial, evidence of both conspiracies and both sets of charges would be admissible as background evidence."). Evidence that would be admissible against Olivieri at a separate trial is "neither spillover nor prejudicial." *Rosa,* 11 F.3d at 341; *see also Salameh,* 152 F.3d at 115 (" 'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper.").

The Court finds that any disparities in the amount of evidence to be offered relating to Olivieri and the amount to be offered regarding his codefendants would not result in substantial prejudice to Olivieri because: (1) those disparities do not appear to be substantial; (2) some disparities are inevitable in multidefendant cases; and (3) the evidence that directly relates only to Olivieri's codefendants would likely be admissible against him in an individual trial.

Finally, the Court is not persuaded by Olivieri's argument that there is a strong possibility of conflicting defense theories. Olivieri fails to provide any specifics regarding these defense theories and how they might prejudice him. Such generalized complaints do not amount to a showing that a joint trial "would in effect deny

him a fair trial." *An–Lo,* 851 F.2d at 556. Furthermore, even if Olivieri were able to show that there are inconsistent defense theories, "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933.

The Court notes that in the event Olivieri were prejudiced to some extent by the joinder of his trial with that of his codefendants, the Court may ameliorate any such prejudice through means less burdensome, potentially unfair, and extreme than severance. As this Court has previously noted, the "risk of [prejudicial spillover] . . . can be mitigated through carefully crafted limiting instructions that warn the jurors to take into account only the evidence admissible against each defendant." *Santiago,* 174 F.Supp.2d at 23. Such "limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial." *Id.* at 22.

### III. *CONCLUSION*

For the reasons set forth above, it is hereby

**ORDERED** that the motion (Docket No. 91) of defendant Joseph Olivieri ("Olivieri") for severance of his trial pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure is DENIED; and it is further

**ORDERED** that the motion (Docket No. 91) of Olivieri for severance of his trial pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure is DENIED.

**SO ORDERED.**